**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOLENE HUNT,

Plaintiff,

v.

DOROTHY MARTIN, individually and in her Official capacity as Division Chief of the State of Nevada Department of Transportation; and STATE OF NEVADA, ex rel. its Department of Transportation,

Defendants.

3:10-cv-350-RCJ-VPC

**ORDER**

Currently before the Court are Defendant Dorothy Martin's Motion for Summary Judgment (#25) and Motion to Grant Motion for Summary Judgment (#30). The Court heard oral argument on July 5, 2011.

**BACKGROUND**

In June 2010, Defendants Dorothy Martin and the State of Nevada *ex rel.* Nevada Department of Transportation filed a notice of removal to this Court. (Notice of Removal (#1)). In support of their notice of removal, Defendants attached Plaintiff Jolene Hunt's complaint filed in the Second Judicial District. (*See* Compl. (#1-2)).

Plaintiff alleged seven claims for relief in her complaint, but then later stipulated to dismiss four of her claims. (*See id.* at 5-11; Order on Stip. to Dismiss (#24)). As to the remaining claims for relief, Plaintiff alleged the following. In the second claim for relief, Plaintiff alleged retaliation for exercising her right to free speech under the First Amendment. (Compl. (#1-2) at 5). Specifically, she alleged that Defendants "were punishing [her] for reporting their

failure to follow laws and regulations" and that they created "a hostile work place for the purposes of her exercise of her rights to free speech when she voiced this concern." (*Id.* at 5-6). In the third claim for relief, Plaintiff alleged a denial of due process because she had "a state-created property interest in [her] job." (*Id.* at 6). Defendants "willfully engaged in joint activity and invoked state action, all under color of law" to deny her procedural due process in violation of the Fourteenth Amendment. (*Id.*). In the fifth claim for relief, Plaintiff alleged intentional infliction of emotional distress, a state tort claim. (*Id.* at 7). Defendants "engaged in the aforementioned discriminatory and work place conduct against [Plaintiff] and therefore intentionally inflicted severe emotional distress upon her as a victim." (*Id.*). Defendants conduct was "intentional, reckless, extreme and outrageous, and resulted in severe emotional distress . . . resulting in physical symptoms including severe problems related to stress." (*Id.*). Plaintiff sought monetary damages. (*Id.* at 6-8).

This Court dismissed, without prejudice, the State of Nevada because Plaintiff failed to timely serve the State. (Order (#28) at 4). Martin is the only remaining defendant.

On December 7, 2010, Defendant filed a Motion for Summary Judgment (#25). Plaintiff did not file a timely response and did not request an extension. (*See generally* Docket Sheet). On January 4, 2011, Defendant filed a Motion to Grant Defendant's Motion for Summary Judgment (#30) based on Local Rule 7-2(d) because Plaintiff had failed to respond. On February 1, 2011, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment (#35). Plaintiff did not address why her response was over a month late and did not respond to Defendant's motion to grant summary judgment. (*See generally* Opp'n to Mot. for Summ. J. (#35)).

## LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome

of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

**DISCUSSION**

With respect to First Amendment retaliation, Defendant argues that Plaintiff has failed to plead any facts in support of claim because the complaint fails to identify constitutionally protected speech and Plaintiff's "punishment" for engaging in such speech. (Mot. for Summ. J. (#25) at 5-6). Defendant asserts that there are no facts in the complaint that indicate the

working environment was hostile or that an adverse employment action had been taken against Plaintiff. (*Id.* at 6). Defendant also asserts that the First Amendment retaliation claim against Martin in her official capacity must be dismissed based on Eleventh Amendment immunity. (*Id.* at 7). Defendant contends that she is entitled to qualified immunity because there is no showing that any of her actions violated Plaintiff's constitutional rights. (*Id.*). Defendant asserts that she is entitled to state law discretionary-act immunity pursuant to NRS § 41.032(2). (*Id.* at 8). With respect to the due process claim, Defendant argues that Plaintiff fails to allege any facts that demonstrate that she has a property interest in her position and that it had been compromised. (*Id.* at 9). Additionally, Defendant asserts that res judicata applies to this claim based upon a Nevada State Personnel Commission Hearing Officer's decision. (*Id.*). Defendant argues that because Plaintiff did not appeal the administrative decision to the state district court she cannot attempt to relitigate the issue now. (*Id.* at 10). Defendant asserts that the due process claim her in her official capacity must be dismissed based on Eleventh Amendment immunity. (*Id.*). Defendant asserts that she is entitled to qualified immunity and state law discretionary-act immunity. (*Id.* at 11-12). With respect to the IIED claim, Defendant argues that Plaintiff's complaint is "void of any factual reference to improper behavior committed by Defendant and does not contain a clue as to what severe problems or symptoms Plaintiff suffered." (*Id.* at 13).

In support of her motion for summary judgment, Defendant attaches the following: (1) Defendant's affidavit; (2) an Employer's Report of Industrial Injury or Occupational Disease; (3) an Order of Dismissal from the Nevada State Personnel Commission Hearing Officer; (4) Plaintiff's Nevada Equal Rights Commission ("NERC") filing for race and disability discrimination dated March 28, 2008; (5) a notice of electronic filing; (6) class specifications for Computer Systems Technician IV before 8/11/06; and (7) class specifications for IT Technician IV effective 8/11/06. (*See* Mot. for Summ. J. (#25) at 17-67).

Defendant's affidavit stated that she had been the Chief of Information Services for NDOT since February 2003 and that she had supervised Plaintiff. (Ex. 1 (#25) at 18). Defendant had temporarily assigned Plaintiff to "conduct technical research for agreements,"

an assignment within Plaintiff's class specifications. (*Id.*). After Plaintiff completed the research assignment, Defendant returned Plaintiff to the programming section of Information Services. (*Id.*). Defendant had reassigned Plaintiff from time to time based on the needs of the department and had reassigned Plaintiff to various duties all within Plaintiff's class specifications. (*Id.*). On March 8, 2008, Defendant reassigned Plaintiff to the NDOT help desk following "notification from the Department of Personnel that newly revised class specifications indicated that the current employee working the help desk was working outside his classification." (*Id.*). After the class specification had been rewritten, the only duties within Plaintiff's classification that she could perform were at the help desk. (*Id.*). The duties in the programming section had been eliminated from the class specification. (*Id.*). There were only two employees who were properly classified to work the help desk and both employees, including Plaintiff, were required to perform that task. (*Id.* at 19).

Pursuant to the order of dismissal, dated June 30, 2008, the issues before the State Personnel Commission Hearing Officer were whether Plaintiff was involuntarily transferred and if so, was such involuntary transfer done to harass Plaintiff. (Ex. 3 (#25) at 25-26). Because Plaintiff's position control number and job responsibilities did not change after her transfer from the Landmark Building in Carson City to the NDOT headquarters in Carson City, the hearing officer granted the State's motion to dismiss. (*Id.* at 26-28).

The class specifications prior to August 11, 2006, provided that a Computer Systems Technician IV had a pay grade of 31. (Ex. 6 (#25) at 42, 55). The class specifications after August 11, 2006, stated that an IT Technician IV had a pay grade of 31. (Ex. 7 (#25) at 57, 67).

In response, Plaintiff argues that summary judgment is improper at this time because there has been no discovery. (Opp'n to Mot. for Summ. J. (#35) at 6). With respect to her First Amendment retaliation claim, Plaintiff argues that "[e]xercising her right to medical care [based on] job related injuries and speech regarding unfair-unequal treatment constitutes a matter of public concern." (*Id.* at 8). She asserts that when she sought medical help she was transferred. (*Id.*). Plaintiff asserts that "[a]s to objective confirmation of emotional distress,

[she] will supply during the discovery process." (*Id.* at 9). Plaintiff asserts that state discretionary-act immunity does not apply because Defendant's actions did not display any sound policy objectives. (*Id.*). Plaintiff asserts that "through discovery [she] will show that Martin [had] a history and policy of harassing [Plaintiff] stretching over a long period." (*Id.* at 10). With respect to the due process claim, Plaintiff asserts that Defendant's argument is improper because there "has been no discovery conducted and the facts regarding the harassment will come to light during that process." (*Id.* at 11).

In support of her opposition to summary judgment, Plaintiff attached her own affidavit. (Hunt Aff. (#35-1) at 1). Plaintiff asserted the following. In 1998, she transferred to NDOT Information Technology as a Computer System Technician III and was stationed at the headquarters building in Carson City. (*Id.*). In August 2004, Defendant transferred Plaintiff to the Landmark Building in the web development section. (*Id.*). Plaintiff complained about the transfer. (*Id.*).

In July 2005, Plaintiff drafted a request to upgrade her position to IT Professional Trainee, but Defendant denied her request. (*Id.* at 2). On January 9, 2007, Plaintiff visited her primary care physician because of issues with her wrists. (*Id.*). Her physician recommended that she see a doctor through her employer because there were "indications of carpal tunnel syndrome." (*Id.*). Plaintiff contacted Diane Kelly in Human Resources and requested the appropriate forms. (*Id.*). Two days later Plaintiff was transferred back to headquarters against her wishes. (*Id.*). Her manager told her she was being moved back to headquarters to assist in a special project, but there was "no project" and she was given "odd and meaningless tasks." (*Id.*). In February 2007, Plaintiff received authorization to seek medical help for her ongoing wrist issues, but chose to work with the pain for fear of retaliation. (*Id.*). On May 1, 2007, she was transferred back to the Landmark Building and was told that she would be trained as a programmer and web developer. (*Id.*). In January 2008, she sought help for her carpal tunnel. (*Id.*). Immediately thereafter she was told she was being moved back to headquarters and would return to the help desk. (*Id.*). On March 28, 2008, she filed a complaint with the Nevada Equal Rights Commission charging harassment based on her

Native American ethnicity, disability, and age. (*Id.* at 3).

In reply, Defendant requests that the Court strike Plaintiff's opposition because it was filed late and did not address why it was late. (Reply to Mot. (#37) at 2). Defendant argues that before discovery can be an issue, Plaintiff must state a plausible cause of action. (*Id.* at 3-4). Defendant asserts that Plaintiff's opposition is devoid of any material facts to support her causes of action. (*Id.* at 4). Defendant reiterates that Plaintiff has not identified what her constitutionally protected speech was or what her treatment was. (*Id.* at 6). Defendant argues that Plaintiff has failed to "assert even minimal facts to establish a basis for allegations concerning a violation of any constitutional right" and that she may not rely on discovery to flesh out a cause of action. (*Id.* at 8). Additionally, Defendant notes that Plaintiff did not respond to her res judicata argument. (*Id.* at 9). Defendant asserts that the Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claim after dismissing the federal claims and notes that Plaintiff did not address IIED in her opposition. (*Id.* at 9-10).

As an initial matter, Plaintiff is prohibited from suing Defendant in her official capacity under 42 U.S.C. § 1983 because neither a State nor its officials acting in their official capacities are persons under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). The Supreme Court has held that because an official-capacity suit against a state officer is really a suit against the official's office, the suit is no different from a suit against the State itself. *Id.* Therefore, the Court dismisses the second and third causes of action against Defendant in her official capacity.

**A. Claim Two: First Amendment Retaliation**[1]

A First Amendment retaliation claim against a government employee involves

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or

[1] In this case, Defendant filed a Motion to Grant Defendant's Motion for Summary Judgment (#30) based on Plaintiff's failure to file a timely response pursuant to Local Rule 7-2(d). The Court denies this motion as moot and proceeds to the merits of the motion for summary judgment because the Ninth Circuit has held that "a nonmoving party's failure to comply with local rules does not excuse the moving party's affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law." *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).

> public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff bears the burden of showing that the speech addressed an issue of public concern. *Id.* The Ninth Circuit has defined the scope of the public concern element broadly and has adopted a liberal construction of what an issue of public concern is under the First Amendment. *Desrochers v. City of San Bernadino*, 572 F.3d 703, 710 (9th Cir. 2009). However, the Ninth Circuit has defined limits. *Id.*

To address a matter of public concern, the content of the speech "must involve 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Id.* Speech that deals with individual personnel disputes and grievances that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. *Id.* Speech that relates to internal power struggles within the work place and speech which is of no interest beyond the employee's bureaucratic niche is generally not of public concern. *Id.* The court looks to what the employees actually said and not what they say after the fact. *Id.* at 711. Speech that seeks to bring to light allegations of "actual or potential wrongdoing or breach of public trust" would more likely amount to speech of public concern. *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983). The court must focus on "whether the public or community is likely to be *truly interested* in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Desrochers*, 572 F.3d at 713.

In this case, it is unclear what "speech" Plaintiff is claiming she made. In her complaint she states that Defendants were "punishing [her] for reporting their failure to follow laws and regulations" and that they created "a hostile work place for the purposes of her exercise of her rights to free speech when she voiced this concern." (*See* Compl. (#1-2) at 5-6). Plaintiff does not provide any more specifics. In viewing the evidence in the light most favorable to Plaintiff,

her speech may have been filing a NERC charge of discrimination for race and disability in March 2008. (*See* Ex. 4 (#25) at 31). Even if this speech was a matter of public concern for discrimination in the work place, Plaintiff does not demonstrate that the protected speech was a substantial or motivating factor in the adverse employment action of transferring Plaintiff. Plaintiff's affidavit establishes that all of her transferring occurred prior to the filing of her charge of discrimination with NERC. Therefore, Plaintiff fails to demonstrate First Amendment retaliation with this alleged speech.

In her opposition to her motion for summary judgment, Plaintiff argues that her speech was "[e]xercising her right to medical care [based on] job related injuries." (*See* Opp'n to Mot. for Summ. J. (#35) 8). In viewing Plaintiff's affidavit in the light most favorable to her, she asked for worker's compensation forms after her physician suggested that she had carpal tunnel syndrome. (*See* Hunt Aff. (#35-1) at 2). Based on the evidence before the Court this is the only thing that Plaintiff did to exercise her right to medical care for her job related injury. Therefore, her speech was not a matter of public concern because she only asked to fill out forms. As such, Plaintiff fails to state a First Amendment retaliation claim. Accordingly, Plaintiff fails to demonstrate that there is a genuine issue of material fact with respect to her First Amendment retaliation claim and the Court grants Defendant's motion for summary judgment as to claim two.

**B. Claim Three: Denial of Due Process**

The Nevada Supreme Court has held res judicata may apply to administrative proceedings. *Britton v. City of North Las Vegas*, 799 P.2d 568, 569 (Nev. 1990). Under the doctrine of collateral estoppel, or issue preclusion, a party may be barred from re-litigating an issue of fact or law that was previously decided in a different case. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In Nevada, collateral estoppel requires a showing of the following three elements:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation.

*Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005) (citations and internal quotations omitted).

A federal court will accord "collateral estoppel to municipal administrative hearings that have sufficient judicial safeguards." *Jackson v. Gates*, 975 F.2d 648, 656 (9th Cir. 1992). To determine whether sufficient safeguards apply, a court may consider the following factors: "whether an administrative agency acted in a judicial capacity and resolved disputed issues of fact properly before it which the parties had an adequate opportunity to litigate, and whether the general collateral estoppel criteria apply." *Id.* at 656 n.8.

Pursuant to Nevada Revised Statute § 284.376, "a [state] permanent classified employee who has been transferred without the employee's consent may request in writing a hearing before the hearing officer of the Department to determine whether the transfer was made for the purpose of harassing the employee." Nev. Rev. Stat. § 284.376(1). The decision of the hearing officer is binding on the parties. *Id.* § 284.376(3). The parties may "petition for judicial review of the decision of the hearing officer." Nev. Rev. Stat. § 284.390(8).

Here, Plaintiff appears to be claiming that Defendant violated her due process rights for transferring her involuntarily. (*See* Compl. (#1) at 6). She appealed her transfer to the Nevada State Personnel Commission Officer and argued that she had been transferred without her consent, that she had been transferred four times, and that her job duties had changed constantly. (*See* Ex. 3 (#25) at 25). The issue before the hearing officer was whether Plaintiff had been involuntarily transferred, and, if so, whether such involuntary transfer was done to harass Plaintiff. (*See id.* at 26). At the hearing, both Plaintiff and NDOT were represented by counsel and both had the opportunity to present witnesses and exhibits. (*See id.* at 25-26). After listening to the testimony and analyzing applicable administrative codes, the hearing officer granted NDOT's motion to dismiss. (*See id.* at 27-28). Nevada Administrative Code 284.394(1)(A) and 284.612 provide that "a state employee may be transferred for the convenience of the state if such transfer was within the same class . . . and the transfer was within the same geographical location." (*See id.* at 26). The hearing officer found that the evidence indicated that Plaintiff's job duties and position control number

remained the same after she transferred to the Landmark building in Carson City to headquarters in Carson City and, thus, the transfer complied with the administrative code. (*See id.* at 27-28).

In this case, the Court applies collateral estoppel to the issue of whether Defendant violated Plaintiff's due process rights based on an allegedly involuntary transfer. First, the administrative hearing had sufficient safeguards because the hearing was judicial and adversarial in nature. Second, the due process issue below is the same due process issue presented to this Court. Third, because Plaintiff did not appeal the hearing officer's decision, the officer's decision that the transfer was not involuntary is final. Fourth, the administrative hearing below involved the same parties. Accordingly, Plaintiff's due process claim is precluded and the Court grants summary judgment on claim three. Moreover, Plaintiff fails to make any arguments that collateral estoppel is inapplicable. Instead, Plaintiff only states that summary judgment on her due process claim is "improper" because there "has been no discovery." (*See* Opp'n to Mot. (#35) at 11).

**C. Claim Five: Intentional Infliction of Emotional Distress**

The elements for IIED are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Defendant demonstrates that there are no allegations in the record that establishes any of these elements. Plaintiff's complaint only alleges that Defendant engaged in "extreme and outrageous conduct" that "directly resulted in severe emotional distress . . . resulting in physical symptoms including severe problems related to stress." (*See* Compl. (#1) at 7). In her response, Plaintiff states that she will provide "objective confirmation of emotional distress" during discovery. (*See* Opp'n to Mot. (#35) at 9). However, Plaintiff's affidavit fails to allege any type of extreme and outrageous conduct and fails to describe any severe or extreme emotional distress. Accordingly, Plaintiff fails to come forward with any specific facts showing that there is a genuine issue for trial and the Court grants the motion for summary judgment on claim five.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment (#25) is GRANTED in its entirety.

IT IS FURTHER ORDERED that Defendant's Motion to Grant Defendant's Motion for Summary Judgment (#30) is DENIED as moot.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly.

DATED: This 21st day of July, 2011.

United States District Judge